Daniel MAYFIELD, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–16244.

Court of Criminal Appeals of Oklahoma.

Sept. 9, 1971.

Curtis Parks, Public Defender, Tulsa, for plaintiff in error.

Larry Derryberry, Atty. Gen., Jeff Hartmann, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Daniel Mayfield, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Tulsa County for the offense of Robbery with Firearms, After Former Conviction of a Felony. His punishment was fixed at a term of not less than thirty-three (33) years, to not more than ninety-nine (99) years imprisonment; from said judgment and sentence, a timely appeal has been perfected to this Court.

The defendant was alleged to have robbed the U-Tote-M Store at 1348 South Peoria, in the city of Tulsa, Oklahoma, around midnight on the fourteenth day of April, 1970. Mr. John Brown was the night manager for the U-Tote-M Store, and he testified that around 12:00 a. m., on the night in question that Mr. James Poffenbarger came into the store. Shortly after he arrived, the defendant came into the store and went toward the back of the store, where Mr. Poffenbarger was. He observed the defendant's pant legs tucked into his socks, and further, that he was dressed in black slacks, dark socks and shoes, and a khaki outer shirt of some kind.

Mr. Brown testified that the defendant returned to the counter with Mr. Poffenbarger, and said, "I want all your money," and at this time, he pulled a gun from inside his shirt. State's Exhibit Number One was identified by Mr. Brown as a gun similar to the one that the defendant had on the night in question. The witness further testified that the hammer of the gun was cocked. The witness further testified that he went to the register and put all the money in a paper sack, and gave it to the defendant. At this point, the defendant made everyone go outside the store, and another customer and Mr. Oakley took off running. The witness did not see the defendant after this incident.

Jim Poffenbarger testified that he was in the store on the night in question, and that the defendant approached him, pulled his gun and said to come with him. At this point, they went to the counter and the defendant told the man behind the counter to empty the register. He demanded the witness's wallet containing a twenty-dollar bill and some papers. At this point, another person came into the store and defendant got his wallet, also. After getting the money, the defendant herded all three of the people outside the store and another customer named Oakley took off running down the street. At this point, the witness, along with the manager of the store, returned into the store and he did not see the defendant again.

The next witness for the State was Herman Oakley, who testified that when he arrived at the store a little after midnight on the night in question, that upon entering the store, he observed the clerk and the defendant and one other customer. The defendant had a gun and he pointed the gun at the witness and demanded his billfold. The witness testified that he gave the defendant his billfold and he observed the defendant's gun and that it was loaded.

The witness testified that after getting the money, the defendant marched everyone outside. Mr. Oakley testified that upon reaching the exterior of the store, he jumped down some stairs, ran to a house and called the police.

Tulsa Police Officer, Larry Detrick, testified that he was in the area of Fourteenth and Peoria Streets about five minutes after midnight on the night in question, and he observed two men running down Fourteenth Street. The witness testified that as he observed the men, one of them began to wave at him. At this point, the first man got into a blue automobile on the passenger side, and the car took off with its lights off. The officer testified that he followed the automobile approximately two blocks, at which point the automobile stopped, the driver jumped out, and started to run until the officer told him to stop.

Officer Detrick testified that the individual on the passenger side refused to get out of the car, and sat in the car for five minutes with a pistol pointed at him. Officer Detrick testified that this person ultimately got out of the automobile and that it was the defendant and that he was apprehended by Officer Roy Goodnuff. Officer Detrick testified at this point that the defendant's cuffs were tucked inside his socks, and that he was wearing a brown khaki shirt, blue trousers, and blue socks. The witness identified State's Exhibit Number One as the pistol he found lying in the automobile. He testified that two of the primers on the cartridges in the gun had been dented. Officer Detrick testified that after taking the defendant to the police station, he found Mr. Poffenbarger's wallet down the defendant's pant leg.

Tulsa Police Officer, Roy Goodnuff, testified that on the 14th day of April, 1970, he was at Fifteenth and Elgin Streets in the early morning hours investigating the robbery. He identified State's Exhibit Number One as the pistol which was recovered at the scene.

Dr. M. J. Jacobs testifying for the defense stated that the defendant had been a client of the Tulsa City-County Health Department, and that he had been treated for tuberculosis. He was first diagnosed as

having active tuberculosis in 1963, and as a result, had taken certain medications. The patient was currently taking Cycloserine, Pyraeinamide, and Myambutol. The witness testified that in her professional opinion, it was possible for the defendant to have certain reactions to these drugs, one of which would be mental confusion. Also, it would be possible for the person taking these drugs to have mental disorientation and hallucinations. On cross-examination, Dr. Jacobs testified that there were no indications in the defendant's records reflecting that he had any such reactions to the drugs.

Vallie Walker next testified for the defense. She testified that she is the defendant's aunt, and that he lived with her during the previous year. She further testified that the defendant, on occasion, would groan and talk to himself, and that she believed there was something mentally wrong with him.

The defendant testified in his own behalf that he had been convicted of six previous Felony convictions. The defendant further testified that he had contracted the disease of tuberculosis in 1963, and as a result, he was required to take certain medications. Defendant further testified that on the night of April 14, 1970, he had been drinking intoxicating beverages, starting off with a pint of wine, and that he ended up drinking about a fifth, and as a result, he did not remember the events that took place on the night of April 14, 1970.

■ The first proposition asserts that the court erred in denying defendant's request to have a juror excused for cause. We have carefully examined the voir dire examination of juror Summers. After it was established that the prospective juror was strongly pro law enforcement, the court, and both attorneys, closely examined the juror as to his qualifications. It was elicited that the juror had no knowledge of the particular crime nor had he formed an opinion as to the guilt or innocence of the accused. He stated that he felt he could give both the accused and the State a fair

trial, and that he would consider only the evidence from the witness stand, and the law at arriving at a decision.

Title 22 O.S., § 659, provides in part:

"Particular causes of challenge are of two kinds:

"1. For such a bias as when the existence of the facts is ascertained, in judgment of law disqualifies the juror, and which is known in this chapter [footnote omitted] as implied bias.

"2. For the existence of a state of mind on the part of the juror, in reference to the case, or to either party, which satisfies the court, in the exercise of a sound discretion, that he cannot try the issue impartially, without prejudice to the substantial rights of the party challenging, and which is known in this chapter as actual bias."

We are of the opinion that the trial court did not abuse its discretion in refusing to sustain defendant's challenge for cause. We further observe that the juror was excused by the defendant peremptorily and that the trial court allowed each side an additional peremptory challenge. We find this proposition to be without merit.

■ The next proposition contends that the trial court improperly overruled defendant's application for commitment for mental examination. The motion was first presented by defendant on arraignment on May 7, 1970, at which time no evidence was presented wherein the application was denied. After the jury was selected on May 27, 1970, the defendant re-urged the motion where, after counsel advised the court that the doctor who could testify about defendant's medication was out of town, the following transpired:

"Judge Simms said that he would [sic] additional testimony at that time in order to determine whether or not this gentleman did or should be required to be committed to Eastern State Hospital, and at this time I think I'm coming forth with some additional testimony and some additional—not testimony, but some addi-

tional evidence as to the possible need for commitment of my client.

"And also, Your Honor, I think Your Honor is well aware that the defendant at his time of arraignment may request that he be committed to Eastern State Hospital. That he may raise the possible fact that there may be a problem with communication with his attorney. He may raise it then. I think he may raise it before a trial. I don't think the jury has been sworn in this case. I don't think that jeopardy has attached.

"I would point these matters out to Your Honor this morning.

"MR. SHAFFER: I would inquire of counsel if he has any evidence to offer supporting this statement this morning?

"MR. GHOSTBEAR: Other than my statement, Your Honor, I have contacted Dr. M. J. Jacobs this morning and she informs me that she's the only medical doctor at the Tulsa County Medical Department, and she does not have a baby-sitter that she could obtain for this afternoon. That she has four other children in the home, and that Dr. Betty Conrad who is my client's personal doctor, will be in this evening. She's currently out of the State of Oklahoma.

"I do have a letter to the effect from Doctor Jacobs stating that Dr. Betty Conrad is outside of the jurisdiction of this Court, if Your Honor would like to see it.

"THE COURT: Okay.

"Well, under the circumstances I feel that the evidence is established, and the statement made does not raise the sufficient doubt in the Court's mind as required by the statute. But that I will take every effort to establish, and I feel certain that the defense of insanity will be injected into the case, and that the defendant's rights will be either fully protected by the defense of the insanity or by the committment to Eastern State prior to formal sentencing if there's a doubt arising either before or after the

imposition of sentence in the remote event that the State does remove the presumption of innocence by evidence beyond a reasonable doubt." (Tr. 125–126)

A similar question was resolved by this Court in Tucker v. State, Okl.Cr., 473 P.2d 332, wherein Judge Nix stated in the second Syllabus:

"While the court cannot act arbitrarily in the matter, it has the right to look to the source of the information, and come to a proper conclusion, from all the facts and circumstances, whether there is a doubt in his mind as to the sanity of defendant and unless there is a clear abuse of his discretion in the matter, his judgment will not be disturbed on appeal."

We are of the opinion that the statements presented to the trial court were not sufficient to cause a doubt to exist in the court's mind, and therefore, did not abuse its discretion in denying the application for commitment.

The defendant next contends the court erred in overruling his motion for mistrial after improper comments were made by the District Attorney. The first objectionable statement is as follows:

" 'Don't go down there, brother, or I'll hurt you.' "

" 'Forgets all that, cocked gun, loaded gun.' No. I can't buy that.

"The officer stops him. Gibson gets out and puts his hands on top of the car. Mayfield sits calmly inside that car. Doesn't remember that. I wonder what's going through his mind? Lure that officer out there when Mr. Gibson's there. He's got the equalizier [sic] right here in his hand. 'We'll take care of that one officer around. We'll just take care of that.'

"But he doesn't do that. After awhile [sic] when the gun misfires he tries to crawl out. He forgets all this. Forgets pointing the gun.

"MR. GHOSTBEAR: At this time, I'm going to object to statements of counsel.

**1316**

I don't believe there's any testimony the trigger was pulled at this time."

■ This Court has consistently held that the right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration and argumentation is wide. Counsel for both the State and the defendant have a right to discuss fully from their standpoint the evidence and the inferences and deductions arising therefrom. Williams v. State, Okl.Cr., 475 P.2d 622 (1970).

■ We are of the opinion that the District Attorney's comment relating to defendant's gun misfiring is a reasonable inference drawn from the evidence. The arresting officer testified that the defendant pointed a gun at him, that the gun was loaded and that primers of two of the shells had been dented.

■■ The defendant next complains of the District Attorney's statement concerning the disparity between the number of years the defendant served and the number of years to which he had been sentenced. We note that the defendant did not object to the statements. We have previously held if counsel wishes to preserve the Record during closing argument of the State, that when an objectionable statement is made by the prosecuting attorney, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the improper statement, and in the event that an objection is overruled, an exception should be taken to the ruling of the court, preserved, and argued in the Motion for New Trial; when this is not done, the matter cannot be presented for the first time on appeal. Overstreet v. State, Okl. Cr., 483 P.2d 738. We, therefore, find this proposition to be without merit.

We have examined the "notes by the defendant Daniel Mayfield" attached to defendant's brief, and are of the opinion that the pro se allegations of error do not contain sufficient merit to be discussed in this opinion.

In conclusion, we observe that the Record is free of any error which would require reversal or justify modification, and the judgment and sentence is accordingly affirmed.